Good morning, ladies and gentlemen. This is the time for argument in Gator.com Corporation v. L.L. Bean. We understand that Judge Gould is with us by telephone from Seattle, is that correct? Yes, thank you. This is Judge Gould here. Very good. So we will proceed to hear the argument and that the plaintiff's appellant at Gator.com may proceed. Thank you. Chief Judge Schroeder, and may it please the Court, my name is Michael Treanor, arguing for the appellant Gator. Your Honor, if the Court please, we'd like to reserve five minutes for rebuttal. Did L.L. Bean conduct a substantial business in California? The answer is yes. In 2000 alone, it conducted almost $70 million worth of business. Was that business continuous? Yes, it was. In response to a question, L.L. Bean acknowledged that although it didn't have the records to identify the fact, it had to acknowledge given the volume of telephone calls, it was in daily business contact with California consumers. Was its business systematic in California? Yes, it was. The telephone sales amounted to $53 million in one year. The website sales, internet through the website electronic commerce sales, exceeded $14 million that year. The mail order sales exceeded $3 million. This was done with almost 200 vendors. Almost 11 million catalogs were sent into California by L.L. Bean. 22,000 or more e-mail subscribers were signed up. Catalogs were sent to specific addresses. So there's no question that the panel got it exactly right in determining in this case that the three requisite, that the requisite tests for general jurisdiction, substantial business, or systematic and continuous business were all met. Now, so presumably from your client's perspective, it would be equally satisfactory to find that there was specific jurisdiction related to the claims at issue. And how in the context of an alleged internet wrong do we decide whether there's specific jurisdiction? Certainly. Here, in addition to the massive context, we of course had L.L. Bean initiating a fight with its threatening letter to Gator in March 16th of 2001. You go through, as the court traditionally has in its specific jurisdictional analysis, through the three prongs, purposeful availment and arising out of or related to and is the jurisdictional reasonable. Now, on the purposeful availment prong, there's an area where I think the jurisprudence of the Ninth Circuit might use some clarification. There it should be clear that all of the contacts can be considered, not just those related to or arising out of. All of the contacts. And when you look at the Supreme Court. That's not a clarification. That's a fairly significant expansion, isn't it? Your Honor, in the Izahi case, for example, the accident happened in 1978, and yet the Supreme Court considered business going on in 1981 and 1982. In the international shoe case, which is an unemployment compensation case arising out of $31,000 of commissions, it was relevant to the court in that case that shoes were being displayed by sample. In the California Supreme Court, for example, they've adopted an approach where the contacts can be considered whether or not they are causative of the claim. It's double counting to require a relatedness issue on the first prong of purposeful availment. So we have plenty of purposeful availment here. All of the facts that I've recited and those in the briefs that are set out in the California Court of Appeals. Mr. Treanor, if we were to take your statement on purposeful availment, which I think is consistent with Burger King, where the court says you determine whether the defendant has purposely directed activities at residence of the forum. My question then would be, the Supreme Court goes on in Burger King to then say, but does the litigation arise out of or relate to those activities? So I'm interested for purposes of specific jurisdiction. Your comments or analysis on the related to or arising out of prong. Thank you. Sometimes this court in opinions has used, instead of the language you just referred to, Your Honor, arises out of or relates to, has sometimes used the phrase arises out of or results from. To be consistent with the jurisprudence of the Supreme Court of the United States, in Burger King, as you mentioned, and in Helicopteros particularly, the court used arises out of or relates to, and that's the second suggestion that I might make in terms of clarifying the specific jurisprudence of the court. Now relates to, in this case, we have the cease and desist letter, the threatening letter. It deals directly with Gator's business. The Martin affidavit establishes that Gator's business is primarily in California. We have a clear arising out of on that portion of that aspect of the prong of specific jurisdiction. The lawsuit arises out of the cease and desist letter. Now relates to, it's clear that you don't need a but-for causation test if you're under the relates to part of the second prong of specific jurisdiction analysis. You can consider, as the court did in International Shoe and in the Zahi and courts have in other cases, the massive number of contacts. There's a kind of the more contacts there are, the less connection there has to be between the claim and the jurisdiction. As in the Vons case in the Supreme Court of California. This court can harmonize its jurisprudence with that. Counsel, if I understand what you're saying then, you're suggesting that the more contacts that a company has with the jurisdiction, the less the contacts have to be related to the cause of action? That's right, and that's what the Supreme Court of California has specifically so ruled in the Vons case. Does that simply suggest then that it's just strictly a continuum between specific jurisdiction and general jurisdiction so that we can sort of mix and match related to and the contacts? That's one approach. Another approach to take is that it can be a hybrid kind of jurisdiction. It's been familiar. It's been an easy form of analysis for courts. You see it all the time. Is there general jurisdiction? Usually there's not. Is there specific jurisdiction? Go down the three prongs. But there's never really been a close analysis, I don't think, in this circuit of these very issues that you're raising, how to harmonize specific jurisdiction so that you can consider factors that are not necessarily causative of the claim but related to the whole thing. I might say that the holistic approach that we represent, you take all the facts into account. You don't just analyze this case, for example, was there general jurisdiction and go down the points that I've mentioned and then forget about all that and then say was there specific jurisdiction based on the threatening letter alone. That's cumulative. And you take a holistic approach. I was thinking that you looked at it somewhat differently and maybe not, and that has to do with the fact that there are Internet solicitations into California and that there are various contacts, retail and otherwise, into California. How does that relate to your claim, or I should say not your claim, but the dispute, which is this pop-up and potential blocking and referral, say, to the Eddie Bauer website? Right. It seemed to me we have to analyze those facts to determine the related to. Or do you disagree with that? No, I don't. I think it's important to look at that. But when you do look at the record and you say Gator is a small company, its primary business is with California customers. It's got a few customers in Maine, but its primary business is in California, and the ads. Where was Eddie Bauer located? Was that a California corporation? I think it's based in Washington, but I don't know that for sure, Your Honor, where Bauer is. What Bauer comes in is because Gator, as part of its promotion program for its customers, would offer coupons for free shipping on Eddie Bauer, and that would show up on a Gator customer's ad, and that's what offended L.L. Bean. This is a competitive way of doing business in California. It affects the very business model that Gator has in California. It's a unique use of the Internet. It wasn't confined to California, though, was it? It would pop up any place that you accessed an L.L. Bean ad. Any customers. Any place in the United States. That's right, any place. That's true, but the substantial nature of the business was in California. The substantial nature of Gator's business was in California because Gator was located here. That's right. But there was nothing unique about what Gator was doing that tied its pop-up ad uniquely to California. No, and it doesn't have to be unique. It doesn't have to be isolated to California to have it be related to California. All that should be sufficient is. . . What contact did L.L. Bean have that suggested that L.L. Bean, by virtue of having sent a cease and desist letter to Gator in California, should be subjected to California jurisdiction? I think that's the question. Well, when you take the holistic approach, you don't just isolate all of these facts that I've mentioned and view this case as solely a case based on a cease and desist letter. Here we have a cease and desist letter. It's not just opening doors to settlement negotiations. We have the right of a California company that's been brought into a fight in California, substantially over its California business. How was it brought into a fight in California? Because L.L. Bean expressly aimed a threatening letter from Portland, Maine, on March 16, 2001, to Gator in California where its principal place of business is. And so in terms of any arising out of or causative approach, clearly this lawsuit arises out of that particular letter. We sought declaratory relief, which is what we're entitled to seek under the Declaratory Judgment Act. There's another aspect. . . Mr. Turner, I'd like to ask you a question that's not been briefed. Excuse me, Your Honor. I'd like to ask a question on an issue that has not been briefed by either party. All right. We've got a lawsuit pending in California. We have the identical lawsuit, same parties, same issues, pending in Oregon. Right? That's essentially right. Does it make sense to have two identical lawsuits with the same issues and the same parties pending at the same time? Well, the answer, I think, is yes, Your Honor. But the question before the court is jurisdiction. The issue is the lawsuit. Should we have a lawsuit on the merits pending in two district courts within the Ninth Circuit at the same time? Ordinarily, the answer to that, Your Honor, would be no. We don't want to use up judicial resources in two courts with the same case. And the court dealt with that in the panel decision. The issue before this court is jurisdiction. Clearly. . . But you have not briefed my argument as to whether or not there has been. . . It makes common sense, judicial sense, judicial economy, to have two lawsuits at the same time. Well, that's a. . . I think the trial judges in each of these cases. . . The Oregon case is currently in the MDL, along with other cases, testing the validity of pop-up ads and dealing generally with the merits. Those cases are scheduled for. . . They've gone through some discovery. They're scheduled for some summary judgment hearings, motions being filed in August and September. The cases are then scheduled to come back. It's clearly possible and clearly makes common sense when the case comes. . . This case is remanded, as it should be, to the trial court, that a sensible disposition be made of which action proceeds and whether the Oregon case gets consolidated with this case, whether this case, which, being in California, is a much preferable forum, it chose this forum, it's fighting this on appeal, so that the practical disposition of the common sense, very important common sense question that you raised, can be handled not in the sense of jurisdiction, which is a key issue before this court, but as a matter of trial court administration, taking into account the circumstances of the MDL. Just an academic exercise now. You filed the Oregon lawsuit, I assume, as a safety-vow matter. Yes, we felt we had to. It can't be lost in California. We felt we had to. Now the Oregon court is going ahead and going to decide the matter on the merits. Why shouldn't that be enough? It may or may not decide it on the merits. All that's going on now is in the MDL, where the discovery and preliminary pretrial matters are going on on Federal issues, not the State law issues. And so if it comes back to the Oregon court, I don't think there's going to be an occasion or a worry or a concern for this court to feel that there's going to be two virtually identical cases going on in two courts at the same time on the merits. That issue can be addressed in the ordinary course of judicial administration. There's one other aspect of this. Counsel, before you go to another issue, I just wanted to follow up with respect to the arising out of point. Is it your position that the matter arises out of the letter or the access to the L.L. Bean website, which a Californian may have, or both? Well, it's really both, and clearly arises out of the letter, Your Honor. I mean, we felt we were given an ultimatum. We were told our business model is repugnant. We were threatened with an injunction. We were asked for an accounting and a demand for money. There was no leeway there, and we were given an ultimatum to respond in five days, and our response was to use our rights under the Declaratory Relief Act. With respect to the specific jurisdiction argument only, is it your position that the mere exposure to the website accessible by a person in California is enough to give specific jurisdiction to the pop-up ad controversy? That's part of the mosaic, I think, Your Honor. Sorry? That's part of the entire mosaic. We don't have to argue in this case that the jurisdiction rests solely on the Internet site. Most of the business that L.L. Bean did, $53 million worth, was just ordinary business over the phone, orders responding to telephone calls. But part of our problem, of course, is to decide just how much it takes to make you or make L.L. Bean a medical pursuit in this jurisdiction. And one of the concerns the Court might have is this case has been characterized in the press and elsewhere as some Internet-related case. Well, certainly it is related to the Internet. Our client's unique business model is based on the Internet, and over $14 million of L.L. Bean sales were on the Internet through the website. But this is much more than an Internet type of thing. Can I follow up on Judge O'Scanlan's question? We have here a cease-and-desist letter sent from L.L. Bean to your client, clearly targeting your client here in California, so to that extent we have directed at. I'm trying to figure out the boundary of the relatedness idea. Is it something that we should consider as part of related to that L.L. Bean in sending the cease-and-desist letter to your client is trying to protect its business in California? Is that related under the specific jurisdiction test? I think that's a fair point, Your Honor, yes. I think we can make that point. In that way, the extent of the California business comes in, but not, at least for present purposes, as a general jurisdiction analysis, but rather as a relatedness-specific jurisdiction analysis. That's right, and that's a helpful way of looking at it, I think. There's one other point I'd like to make on specific jurisdictions in terms of harmonizing the court's jurisprudence. The court recently came down with a decision upholding pendant personal jurisdiction. That's not an issue in this case, but it provides a lens through which to look at the issue of specific jurisdiction, because any time you look at pendant personal jurisdiction or supplemental jurisdiction, you're looking at a related set of facts. For example, suppose a book had come into California filling completely the express aiming targeting test of the Calder against Bull. And then suppose that the author had gone on a talk show in Nevada and uttered the same kind of defamatory remarks, but in a jurisdiction where it didn't carry over into California. Could there be pendant personal jurisdiction over those two very related claims? There's a way of looking at the specific jurisdiction issues through the lens of pendant personal jurisdiction, which I think fosters and reinforces the idea that you take a holistic approach in looking at specific jurisdiction. You don't just isolate all of those factors that I've mentioned on general jurisdiction. Can I ask a question about general jurisdiction?  Which is, of course, how you had won in the panel decision. Are you willing to go so far as to argue that if I am an employee of L.L. Bean in Maine, I have an employment related dispute with L.L. Bean in Maine, and I bring suit in California against L.L. Bean on that dispute, even though I continue to live in Maine? Do you think that there is general jurisdiction in California that would permit such a suit? The first prong of general jurisdiction, substantial business or continuous and systematic business would certainly be satisfied. The second part of the analysis, which is required for general jurisdiction, Glenn Corgrain establishes that. The panel decision relying on a MOCO establishes that. The second and important ground for general jurisdiction is that the jurisdiction must be reasonable. So the trial judge in that case would be quite proper to say, yes, L.L. Bean meets all the tests of the first part of general jurisdiction, but we don't think there's enough connection between the employee's disgruntled suit arising out of Maine and having no connection with California. In addition to using the reasonableness out, reasonableness part of general jurisdiction, there are also the venue rules and the transfer of venue rules. There's also the very practical fact that people are not likely to bring those cases. This is one of these. Well, they might, for example, if a statute of limitations is run at home, and they might bring an estate court in which there's no venue transfer and all you get is Form 9 convenience. That's true, Your Honor. There are always going to be problems with choice of law issues, statute of limitations, havens, and so forth. But you don't hear those problems through the upfront jurisdictional analysis. The Kathy Keaton case made that clear in the Supreme Court of the United States. She sued in New Hampshire, which was a six-year statute of limitations haven on defamation claims. And the Supreme Court, in dealing with that and dealing with the choice of law problem that that presented for a unified single publication rule, all damages throughout the United States, addressed that very issue and said, yes, there may be conflict of laws issues here. There may be forum shopping problems here. But you don't address them necessarily in the jurisdictional analysis. And as I say, you've got the out, the clear out under Glencore Grain, for example, and it's a panel rightly held in this case, that the jurisdiction at all times must be reasonable. Mr. Finger, you are, in effect, collapsing the two bases of jurisdiction into one and writing out of consideration for general jurisdiction factors such as the presence of an office or store in California, having people located in California, being registered to do business in California, and so forth. Right? We're not writing that off. That would clearly be relevant. You have mentioned it so far, and I take it that it's not of any importance to you in this case. I mean, even important enough to say it's not important. No. It's not important. I mean — Okay. So that requires us, in addition to overrule, in effect, Bancroft and — I don't think you have to overrule Bancroft because that was really a specific jurisdiction case. Well, it wasn't. We said that there was no general jurisdiction based upon the factors that I just mentioned to you. And so we would have to undo that. And if we did have to undo it, how do we reformulate, in 25 words or less, the test for general jurisdiction today? I think you just used the terms that the Supreme Court has used. Is the business substantial, and is it continuous and systematic? The exercise in Helicopteros would have been simple had the court stopped at the point that there's no store here or no physical presence in Texas. Instead, it went into a very careful analysis of the substantiality of the business, in that case not enough to sustain general jurisdiction, leaving open specific jurisdiction. Now, the issue of melding them together, that has not yet been reached by the Supreme Court of the United States. But in footnote 10 of the Helicopteros opinion, it has specifically reserved the question about the rises out of or relates to and whether the relates to is a form of specific jurisdiction or not. That's the question. We all know how easy it is to go through general jurisdiction and specific jurisdiction. But when you're presented with a case where you have massive facts on general jurisdiction, and on top of that you've got this threatening letter, then it seems to me clearer that you have jurisdiction as the panel rightly held. Mr. Treanor, back to the question raised by Judge Fletcher, the example, suppose instead of staying in Maine, the disgruntled employee moves to California and then files suit in California with respect to the employment dispute that he had with Alabama. In that situation, how would you apply your reasonableness test to that example? Well, reasonableness test would go through the seven factors and alternative forum and reasonableness of connection and availability of witnesses. You'd go through that analysis. I might mention that, Your Honor, and it's not directly in point because it's a specific jurisdiction case, but in the worldwide Volkswagen case, the car was bought in New York, but the Robinson family drove it and drove it to they were headed for Arizona. They had the accident in Oklahoma. Two of the defendants in that case didn't raise jurisdictional objections in the Supreme Court of the United States. They were the Audi, the manufacturer, and Volkswagen, the importer. Why didn't they? Because the car had been put on the stream of commerce. There's no holding on that, but it's a realistic approach to the question you're raising. But in the example from Judge Fletcher, would it be reasonable, in your view, to find general jurisdiction in California for the claim brought by the former employee who happens to move to California? It would certainly be reasonable to say there is substantial, continuous, systematic context. Then the second question is a highly fact-specific determination. On your facts, it could be reasonable. It might not be reasonable. It might say you can't just come to California and create a lawsuit by moving from Maine. But you've added additional fact, but there could be a mosaic of facts that could be relevant. I see my time is cutting into rebuttal, Your Honor, if I could reserve the rest of it. Thank you very much. Thank you. Thank you. May it please the Court, Peter Brand for L.L. Bean. The district court properly ruled that it did not have either general nor specific jurisdiction in this case. First, the court did not have general jurisdiction because, over L.L. Bean, which has no offices, no employees, no operations whatsoever in California, the traditional indices of general jurisdiction. If a person causes harm in California? I'm sorry, what? If a person does an act which causes harm in California, does California have jurisdiction? They would under specific jurisdiction. And, indeed, specific jurisdiction is the safety valve for general. Didn't that letter cause harm to Gator, the company and its investors because of the disclosure laws? I'm sorry, what? You understand the disclosure laws affecting corporations and investors? Didn't that letter cause immeasurable harm to Gator and its investors? Absolutely not, Your Honor. L.L. Bean has an obligation under the Federal laws to protect its intellectual property rights. Sending a letter that simply says to Gator. If the letter doesn't cause harm, it's something else again. But if it does cause harm, that's another matter. L.L. Bean is saying you are infringing upon our intellectual property rights. There has never been a suggestion in this litigation that the letter was tortious, defamatory, or anything else. And it is the letter that simply says you're infringing upon our rights and, therefore, you are and tells them to stop that. It can't then transform. The fact that someone asserts their intellectual property rights can't then transform itself into and now you're causing harm. Because that would then mean that you would always have jurisdiction. And I would submit that that is solely specific jurisdiction, which the district court properly ruled was lacking as well, based on a single cease and desist letter. That letter alone can't give rise to this particular lawsuit under the three-part test that this Court has adopted. If that is the case, and we do have cases where a single cease and desist letter has provided specific jurisdiction. Right. In Bancroft, for example, where it has independent consequences. Right. So let's take your statement as a starting point that if the letter alone is not enough, but we go back to Burger King and we then analyze whether L.L. Bean's contacts in the State, whether this lawsuit relates to or arises out of those contacts, and if part of those contacts are the interactive sales transactions with customers, which take place over the Internet, which cause this collision, you know, between the pop-up and your ads, why isn't that, why wouldn't that satisfy the second prong, leaving aside the contacts issue for now? Why wouldn't that satisfy the related to prong of specific jurisdiction? For several reasons. First, I might just point out, in the record in this case, it was never asserted that those other contacts gave rise to specific jurisdiction. It was solely the cease and desist letter. It wasn't the fact that L.L. Bean had other, you know, had an active interactive website. And it is this conflagration of specific in general has only occurred now on appeal, where it is, well, we're going to kind of mesh those two together and we look at all these other contacts. So it's not part of, that did not occur in the record. But more importantly and more significantly, it has to be the contact, the conduct of the defendant, in this case it would be L.L. Bean, that gives rise to the lawsuit itself. The lawsuit is not about L.L. Bean's website and whether or not L.L. Bean has a website that can be seen in California or Wyoming or any place else. It is the legality of Gator's business model. And that's what they keep telling you. It is the legality of their actions. It is their pop-up ads that are obscuring L.L. Bean's website. But that's what's happening in California. And your desire to stop it is happening in California. But it is not. But the wrongful action, or that is what gives rise to the lawsuit, it is Gator's pop-up ads themselves. Well, you're saying that for jurisdictional purposes we have to assume that you're legally correct and the other side is legally incorrect. But isn't that the flip side? Normally for jurisdictional purposes don't we have to assume that the plaintiff could prevail and then look at the jurisdictional facts? For specific jurisdiction the issue is the contact or the conduct of the defendant is the lawsuit a rise out of or relate to that conduct. And the only conduct that's being identified is the cease and desist letter. It is not Gator's actions. Because otherwise that would be a complete bootstrap in which Gator could say we have an Internet company which does certain things. Therefore, if we get a letter, we can then file suit any place we are doing those actions. Because if you think about it for a minute, I mean the ---- I guess it doesn't ---- you say that in a tone where it sounds just horrifying, but I'm not sure why it is a problem to say that in State X this Internet traffic is going on and you send the cease and desist to State X. Why isn't the reasonableness prong the correct out rather than the relatedness prong being the correct out? Well, we think that they fail under the reasonableness prong, too, because it can't be ---- I understand. I understand that you do, especially in the hypothetical. But why isn't that sufficient? Because if you ---- stepping back, if Gator's pop-up ads appear wherever L.L. Bean's website is viewable, and that would give rise to a specific jurisdiction where that occurs under that analysis, there's no reason why it has to be California. It could be Louisiana or it could be Texas or wherever. Right. And if you sent the letter to Louisiana or Texas, I don't understand why that wouldn't be sufficient for the relatedness piece. Again, leaving aside the reasonableness piece. But what is ---- what makes it not related to if you send ---- if you see the activity in Louisiana, you send the letter to Louisiana, why isn't that related to Louisiana? Because the lawsuit is not about the letter. The lawsuit is about the legality of whatever the particular ---- the underlying actions are of the parties. But that's precisely ---- this is where I think we're mixing and matching. You're suggesting that somehow the focus is solely on the fact that L.L. Bean has a website, and therefore it would be subject under this discussion to suit anywhere in the United States. But it seems to me the issue is not just the website but the advertising that's related to purchases on the website. And so it's ---- you don't just slice it so thin and say if it's just a website, there shouldn't be jurisdiction. And I agree with that. I don't think there is, you know, nationwide jurisdiction merely by the presence of a website that finds its way into all 50 states. But don't you have to take the totality and say what the lawsuit is about is that you're selling to customers, including particularly targeted in California, and you don't want your customers to be faced on your website with this offending website pop-up. That's the essence of the lawsuit, right? Correct. But the only ---- Okay, that's the essence of the lawsuit. So in that lawsuit, for example, the fact that you might make telephone sales doesn't really figure into that little complex, correct? Correct. I mean, that's ---- Right. You could make telephone sales. You could make walk-in sales. Which is most of what is in California. So we'll put those over here. But the interactive website sales and the collision between your customers and the pop-up, that's the essence of the suit, correct? Right. But it's not a letter. And so why doesn't that relate to your contacts in California as respect to solicitation of California customers to do business on your website? Let me come at it differently and see if this responds to your question, which is that L.L. Bean simply has the website. And if someone else ---- the issue of is it wrongful or not wrongful to put the pop-up ads on the website, that is being done by the declaratory judgment plaintiff. But the actions ---- one of the things that Burger King teaches us is the actions of the plaintiff can't be a basis for finding jurisdiction over the defendant. So it has to be what is the defendant's actions and whether or not they are purposefully availing themselves in this jurisdiction. So, for example, and coming back to the ---- and the only thing cited to the district court, and I would submit properly, that the only thing that they properly could rely on to get specific jurisdiction was not whether or not Gator's actions were legal or not in the fight over the Internet. It was the letter that L.L. Bean put into the United States mail and sent to Gator. And we would submit it doesn't satisfy any of the three parts of the test. It's not a purposeful availment of the privilege of conducting business when you send a letter to someone who ---- and whether they're located in California or Oregon or New Mexico or wherever is immaterial. It's entirely fortuitous, entirely attenuated, doesn't satisfy the Burger King test. Mr. Brandt, was there any way that L.L. Bean could have warned Gator of ---- that it was infringing without contacting in California? Is there any way that L.L. Bean could have avoided jurisdiction in California here by warning Gator through some other means? It's hard to imagine how that, you know, if you don't tell them that you're infringing and tell them to stop, it's hard to know how to do it. You could have, but I suppose they could have posted something on their website. All those who are engaged in pop-up ads, please stop. We think it's infringing our rights. And not send a letter specifically to Gator. But I think what that does is it takes you directly into what is the fundamental policy problem with the Gator position, which is someone who's faced with a potential infringement of their intellectual property rights under their analysis of a specific jurisdiction has three options. You could do nothing and let them infringe, if that's what they're doing. You could send them a letter and try and work it out outside the court system, but you're under the pain of subjecting yourself to jurisdiction wherever they are located. It happens that they're in California, but they could be anywhere in the world. Or third, to file the Blitzkrieg lawsuit, as it were. To immediately go in, file suit against them in a place where you think you have jurisdiction over them. And because these pop-up ads appear, you know, in Maine, presumably we could sue them in Maine if we had chosen. But that can't be the policy, and I would submit that one of the things that the en banc court should consider is the policy implications of saying if you send a cease and desist letter telling someone to please stop infringing your intellectual property rights, you do that under the pain of subjecting yourself to jurisdiction wherever you sent that letter. Counsel, what is the relevance in your construct of all the other kinds of contacts, the sending of hundreds of thousands of catalogs to Californians, the telephone calls to and from Californians, the photo shoots in California, the employees attending meetings in California, all those traditional things. How, if at all, in your view, do those relate to the pop-up problem? We agree with the question. I think it might have been Judge Reimer is that we should not conflate these two. We cannot be just mixing and matching and jamming these together. Those only relate to the general jurisdiction issue, and they do not have anything whatsoever to do with specific jurisdiction. So in your view, you could have enough contacts to almost but not quite get to general jurisdiction, lots and lots of contacts but not quite enough, but then do something over here on an Internet business and you never get any jurisdiction even though, in fact, you're doing millions of dollars worth of business in California. I don't think if you almost have general jurisdiction and you almost have specific jurisdiction that that just adds up to jurisdiction, and that's, I think, what the implication is of the Gator argument. I would say, and I think the Supreme Court was quite clear in Helicopteros, is that when they said there is general jurisdiction and there is specific jurisdiction, I think both of those should be analyzed separately, and you should look at the specific contact. And the reason why there are so many specific jurisdiction cases now and so few general jurisdiction cases is that specific jurisdiction looks at what it is that you're doing that gave rise to the lawsuit. So, for example, it certainly is true under any host of cases. If we were to sell a defective product and ship it directly to a consumer in California or somewhere in the Ninth Circuit, you should expect to be subjected to jurisdiction. But the mere fact that you carry on commerce from away, that is, that your nerve center of your company is located in Maine, you're incorporated in Maine, and all of your operations are in Maine, and you send products or engage in commerce, qualitatively that is not a type of contact that is going to give rise to general jurisdiction. I would submit that this Court should follow the lead of the Supreme Court from Helicopteros and analyze those two questions separately, because when you do, I think the result is that there is not, in this case, either general or specific jurisdiction. Can I follow up on Judge Graber's question? And that is, we have the cease and desist letter sent by L.L. Bean to Gator here in California, and what they're trying to do, obviously, is protect their business against what they regard as a wrongful act on the part of Gator. Now, the business they're trying to protect is a general business. A lot of it carried on through the Internet, through an interactive site by which California customers, at their computers in California, interact with the website that L.L. Bean has. Is it related within the meaning of the specific personal jurisdiction test of relatedness that the cease and desist letter is being sent in order to protect the business that L.L. Bean is conceivably doing in California? That is to say, it appears to me, at least a plausible argument, that this is just not a lot of unrelated contacts. These are related contacts. This is precisely the business you're trying to protect when you send the cease and desist letter. Can you help me out with that? I'll try, Judge Fletcher. I mean, the cease and desist letter, I would agree, would give you justiciability, you know, that they could then say we have a real-life controversy. But the underlying controversy, it does not, the lawsuit, unlike, for example, the Bancroft case, is not about the letter. I didn't ask whether it's about. The word is related. Right. And this Court has used a rise out, and the Supreme Court has used a rise out, and in the Glencoe case, I think, substantially relate, especially if there's only one contact. But the Supreme Court has used the term related, too, hasn't it? And it is not related, too, in any meaningful sense, because otherwise, if a cease and desist letter relating to a dispute over intellectual property rights on the Internet, if that means that you can then sweep into that whatever the contacts are on the Internet, it means that there is now specific jurisdiction, not just in California, but anywhere. Well, I'm not so much talking about contacts on the Internet. I'm talking about the business that L.L. Bean does with Californians that it's trying to protect, and it's trying to protect it because what's happening is all these Californians are on the Web site. They're seeing, uh-oh, here comes this ad. Maybe I'd better go to Eddie Bauer. And the cease and desist letter is designed precisely to protect their business with these California customers. That is correct. The letter is telling them, please don't do that. Right. Because you want to protect the business with your California customers who are using the Web site. But it is not the ‑‑ but there is nothing in the lawsuit that is about what L.L. Bean does. It's all about what Gator does. See, that's where I think the hangup in terms of the analysis, which is it's the ‑‑ it'd be different. It'd be different if we were suing Gator directly, that they weren't. Why do you say there's nothing about what L.L. Bean does? The dispute really is about whether or not your cease and desist letter is well founded in law. I mean, the argument is, do I have to cease and desist? And L.L. Bean sent out a letter that says you have to. And if Gator says, I guess I have to and just rolls over, they've been harmed. If it turns out they really didn't have to, they've been harmed illegitimately. So they're trying to do what you're trying to do. Is the cease and desist letter well founded in law? And the issue, though, to drill down into it further, the issue, however, is whether or not when Gator is using L.L. Bean's trademarks, L.L. Bean's URL, and L.L. Bean's good name in order to generate the pop‑up ad, whether or not that is violating L.L. Bean's rights. And just to describe that. So it could be, even if you were using it to generate it to put these pop‑up ads someplace else, I mean, that's still the underlying fight. That's what this case is about. It's not about L.L. Bean has a website where they sell stuff. The issue is, can they use our good name? Can they then use our trademarks, our URL, in order to generate those ads? And especially since the only thing they asserted was the letter itself gave rise, you know, that was a specific jurisdiction. It is a ‑‑ I would submit a ‑‑ it certainly doesn't satisfy any of the three parts. It's not a purposeful availment. You know, we're not purposely availing of the privilege of conducting business in California when you send a letter to someone who happens to be in California. What relevance, if any, is there to the fact that you have available to you a 1404 transfer motion? I think that is ‑‑ I think that is ‑‑ it's being held out as a fond hope. It's a purely discretionary call. And it doesn't get at what is the fundamental ‑‑ some of the fundamental problems having to do with due process coming out of ‑‑ going back to the Hansen case in which companies should be able to structure their activities in a way so that they have some minimum assurance of knowing where they will and will not be sued. What we shouldn't be in a position of doing, Judge Fletcher, is to be in a situation where it is entirely up to the discretion of a particular district judge to say, no, I think we'll keep this case. I'm happy to do so. Is the standard under 1404 any more discretionary than, say, the reasonableness standard? That is to say, there is a standard in 1404. It's a judgment call. And the district judge gets a fair amount of discretion in making that call. But is it any more or less precise a standard than the seven‑factor reasonableness test? Well, I mean, it's ‑‑ because they're both, you know, gestalt tests at some level, I mean, it's hard to really, you know, say that, oh, this one definitely meets that way. I mean, the real problem, though, is that when L.L. Bean, which has structured its business, if you think of it, and it does not have any of the traditional indices that would allow them to be ‑‑ expect to be sued for anything by anyone at any time. And that's what general jurisdiction is really talking about, is that the ‑‑ coming back to your example to Mr. Treanor, there is nothing in general jurisdiction. If you have general jurisdiction over L.L. Bean, the employee who's in Maine who says, you know, I hear that those judges in California treat me a lot better, and then they file a suit in California. They have the right to do that if there's general jurisdiction. That certainly doesn't satisfy the notion of what comes out traditionally of coming out of the due process court. Would you clarify one thing for me? Sure. With respect to Judge Ferguson's earlier question about the Oregon case, who initiated that case, and was there a ‑‑ is Oregon court the MDL court? Gator initiated all the lawsuits. They sued us first in California. A couple days after Judge James granted our motion to dismiss, they then ‑‑ actually, they filed the notice of appeal almost on the same day they filed the Oregon case, completely mystifying me, I have to say. Was there a challenge? Did L.L. Bean challenge jurisdiction in Oregon? We did not challenge the personal jurisdiction, because at that time we had a number of stores in Oregon. I think it's a ‑‑ I mean, there are arguments that can be made, but I think, you know, not to resell my general jurisdiction, but, I mean, those are the traditional elements where you've gone in, you have an agent, you have bank accounts, employees, bricks and mortar. The traditional things associated with making yourself at home is the Glencoe language. So we did not challenge the personal jurisdiction. At that time, we did file a motion to dismiss on ‑‑ as to whether or not there was still a justiciable controversy, because they were still ‑‑ the only thing they ever pointed to was this one letter sent in March of 2001 and a year and a half later. Discretionary call, the judge there did not grant that motion. That case was then transferred under the MDL procedures down to Atlanta, where it's currently pending, and that case is going forward. The complaint is virtually identical. The lawsuits are the same, and Mr. Treanor is going to have to ask her. I don't know why they're too soon. Is this particular case also subject to MDL in any way? Well, it wasn't because it was dismissed. It was dismissed, and then it went up. Except it's still pending. Still pending. So if we found that there were jurisdiction, would it be just transferred to Atlanta? I would assume that it would be treated as a tag‑along case in that sense. So you would then have two cases coming out of the Ninth Circuit on the same issue. Although ‑‑ That's not uncommon. It happens frequently. MDL cases. You have them all over the country. You have multiple cases from California.  But it's not usually the same plaintiff and the same defendant with the same case. I mean, it's kind of an odd situation. I don't know why any of that happened. But to return briefly just for a couple of moments on the general jurisdiction, is that our position on that is that you should ‑‑ obviously the birth of the Internet did not mean the death of Helicopteros and the due process clause. That you look to what are the traditional notions of what is necessary in order to assert jurisdiction so that you can be sued by anyone for any claim at any time. And those traditionally have fallen into a couple of different categories. You look to where is the company incorporated or where is alternatively a broader element, is what is its base of operations. There's no doubt the nerve center for L.L. Bean is in Maine. Mr. Brennan, following up on that argument, it's hard for me to see why there would be general jurisdiction in Oregon but not in California. It seems to me your contacts here is much more substantial than your contacts in Oregon at that time. Qualitatively, the contacts, I would submit, are going to be more substantial in Oregon. Obviously, it was a judgment call as to whether or not we wanted to file. I mean, because we had employees. Qualitatively, you mean physical presence. Because there's physical presence, there are operations there. You have employees. You have bank accounts. You collect taxes. Well, to the extent Oregon has. Now I remember why there's a store there. But, I mean, you have many of the elements that are more traditionally associated. You keep referring to the traditional elements, but those only have to be approximated. They don't have to be invariably present, right? The so-called traditional brick-and-mortar elements. What approximate, I think, is referring to, it is the nature of the contacts, and are they the types of things that you would consider to be. And conducting commerce with citizens from afar, that is, is certainly not something which is the nature of conducting business in the state. As this Court has said a few times, and has been picked up by the Fifth Circuit and others, is that conducting commerce with, it's conducting commerce with California. It's not conducting commerce in California. So that when you have no agent, no employees, no offices, no bank accounts, no real property, no personal property, no advertising, and just no, there actually wasn't even any advertising directed at California. This is a nationwide company. There was no, and there is nothing that is traditionally associated with, as this Court said in the Glencoe case, where you've come in, not only come in through the door, but you've made yourself at home. Are you essentially domiciled in that state? I mean, there's no doubt that the answer is no. And the Internet adds nothing to that. And, indeed, I would submit that it actually has less of a contact than does what are traditionally things that, you know, that direct marketing companies like LLB interviews. It is less interactive, I would submit, to call an 800 number and say, does it come in blue, is it likely to shrink, you know, et cetera, et cetera, than it is to, you know, go through the Internet. It's certainly within, in our household, my wife says, no, I'd much rather call the 800 number and I'd much rather go on the Internet. They're just different mediums of communication. It is not a, it's not a, the new economy is not, does not mean the death of general jurisdiction. Because the consequence of looking at it differently, that if you have a so-called interactive website, that that then gives you jurisdiction where there's interactivity. That means that there is general jurisdiction everywhere for the millions of companies. And there's no stopping point, I would say. Well, what about the reasonable test that Mr. Cranor referred to as applying to general jurisdiction? But the reasonable test, which then is the burden, is to show that any particular defendant, it is unreasonable for you to have to defend it in this case. And coming back to the colloquy I had with Judge Fletcher is that there's no bright line. I mean, indeed, if you look at it, in the Supreme Court, in the specific jurisdiction context, only once has there, they had a case in which they looked at and decided on reasonableness, in the Asche case, which I think I mispronounced, in which, and it was, and that was the only example. And so that if you are a company such as LLV, and coming back to the issue, which is what the, some of the due process, principles of the due process clause, that you should be able to structure your activities to know where, with some reasonable degree of assurance, where you will and will not be subject to suit. Or that it's a substitute for state sovereignty, if you will. That California has the right, under the, you know, this federalistic system, to assert jurisdiction over persons and property that are within its jurisdiction. Has the Supreme Court ever applied the reasonableness test in a general jurisdiction case? Or did we invent that in the Ninth Circuit? I'm not sure if I want to answer. Okay. It's okay. We invent a lot of stuff. It's, I believe that there are references to it in the Supreme Court. I've drawn a blank as to, there are only two Supreme Court general jurisdiction cases, Helicopteros, where they said no. And the facts of those are pretty stunning, I think, compared to LLV. And Perkins, where they set up the nerve operation there. So I think there is some language in some of those cases, but it's not the. . . Not the seven-part reasonableness test. It certainly is not the seven-part reasonableness test. Mr. Brain, could I just ask you one question about the Internet aspect of this, which is what makes it interesting, but which I know very little. Am I correct that these pop-up ads only come up on the screens of people who have the Gator.com software? Yes. Okay. I see that my time has expired. Thank you. Thank you. Mr. Brain. Mr. Perkins, would you address one issue brought up by LLV, and that is that the specific jurisdiction was predicated solely on the cease-and-desist letter and not on other contacts in the district court? Yes, Your Honor. Also, we address the issue of relates to at pages 11 to 15 of our reply brief. And in paragraph 5 of the Martin affidavit, and that's, I think, responsive to your question and the colloquy that occurred with Judge Fletcher, Mr. Martin says there are more gator users in California than in any other state. In contrast, only a small fraction of gators users are in Maine. So clearly, this action affects substantially what gators business is in California and LL Bean's business in California insofar as it's affected by gators pop-up ads. It's very simple and very helpful colloquy that's occurred. The fundamental issue here, and we shouldn't lose sight of it, is that we're talking about due process. And the essential element of due process in jurisdiction cases is, did the defendant have fair warning that it would be hailed into court in California? Given the massive facts plus its aggressive actions against gators, we think the conclusion is inescapable that there's no violation of due process to LL Bean. LL Bean certainly was on notice, but if its products sold to Californians failed in any way, that they would be subject to suiting California. Or if it had a contract dispute with someone who purchased an LL Bean product. But what notice might LL Bean have had in sending a letter that it had to send to your client in California because that's where your client happened to be. It couldn't post it someplace in Maine and hope that your client would see it. So it seems to me a little bit of a bootstrap that gator can behave badly in LL Bean's eyes in California and then LL Bean has to consent to jurisdiction when it tries to warn a gator off. Well, apart from product liability and contract actions, it has to anticipate that there's going to be trademark issues involving how it does business. The issue involves the threatening letter it sent. So if in any place its products are found and where it might be liable to trademark infringement, LL Bean will be subject to jurisdiction. And if it does a colossal business that it does here in California, it's got to anticipate in today's climate that there's going to be intellectual property issues. And when a new company comes out, like Gator does, developing a new way of using the Internet, and it has substantially all the business in California. Any company anywhere in the world that has products that exist in the state of California that has an intellectual property issue can be subject to jurisdiction in the state of California for any reason. I don't think we're saying that. We're saying on this record. Oh, that's what I just heard you answer. On this record, it's fair to anticipate that when a company does the substantial business. Yes, it is. So my company from New Delhi does this huge business, has a lot of products in California, a lot of circuit boards or whatever in California. So if it wishes to protect its intellectual property rights, it can't do it in California without making itself amenable to personal jurisdiction. Right? Well, I think it's exposed to personal jurisdiction, certainly. I mean, if there had been a. . . For any reason, for any dispute. Well, I don't think it's hard for a lawyer to argue any time, never, and so forth. But suppose, for example, there had been a trademark violation of L.L. Bean's catalog that it sends in here. There might be business use of that. There might be a legitimate dispute. L.L. Bean, it seems reasonable. It doesn't seem to be a denial of due process to say that L.L. Bean should anticipate being sued here in California as a result of business that it generates and that a California business. . . It deliberately intersected itself with a California business. The same would be true for Guam, for example, because I'm sure there's a pair of hiking boots in Guam. Well, I don't think we've diverged that far. I see my time is shut, but I think if you focus on the fundamental constitutional issue, you'll find that there's no violation of due process here at L.L. Bean. Thank you very much. Thank you. Thank you.
judges: Schroeder,ferguson, O'scannlain, Rymer, Tashima, Graber, McKeown, W Fletcher, Gould, Paez, Bybee